UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> SYLVESTER MITCHELL, III, <br><br> Defendant. | 4:21-CR-40128-01-KES <br><br><br> ORDER DENYING MOTION FOR A SENTENCE REDUCTION AND MOTION FOR A TRANSCRIPT |

Defendant, Sylvester Mitchell, III, filed for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Docket 71. Mitchell filed separate motions for a transcript of his sentencing proceedings and waiver of costs associated with the transcript. Dockets 76–77.

## BACKGROUND

On June 7, 2022, Mitchell pleaded guilty to one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 1, 46. For this crime, the court sentenced Mitchell to 160 months in federal custody and five years of supervised release. Docket 54 at 2–3. Mitchell's projected release date is April 24, 2033. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 2, 2024) (enter BOP register number 22282-031). Mitchell is incarcerated at United States Penitentiary Lee (USP LEE), a high security penitentiary with an adjacent minimum security satellite camp. *See id.*; *USP LEE*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lee/ (last visited May 2, 2024).

Mitchell filed three previous motions for reduction in sentence, which the court denied in a consolidated order. *See* Dockets 59–60, 67–68. On March 11, 2023, Mitchell filed his current motion for early release under § 3582(c)(1)(A). Docket 71. Mitchell then moved for the production of sentencing transcripts and waiver of associated costs. Docket 76.

I.   **Request for a Transcript and Waiver of Costs**

The court denied Mitchell's previous request for a transcript and waiver of associated costs. *See* Dockets 65–66. The court in its previous order noted that, generally, Mitchell does not have a constitutional right to a free transcript of his sentencing hearing. *See* Docket 66. Mitchell's time for appeal has lapsed and Mitchell states he intends to use the transcript in support of his request for a sentence reduction under § 3582(c). But the sentencing hearing is not relevant to his motion for compassionate release. Thus, Mitchell's current requests for a transcript (Dockets 76–77) are denied.

II.  **Compassionate Release under § 3582(c)(1)(A)**

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in

sentence must consider the § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)–(b). The policy statement was amended on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited May 2, 2024).

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier." 18 U.S.C. § 3582(c)(1)(A).  When a warden denies a request, the defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Smith*, 460 F. Supp. 3d 783, 794–97 (E.D. Ark. 2020) (holding that the First Step Act only allows a defendant to "file a motion for compassionate release if he has fully exhausted his administrative remedies" within the BOP).

It is unclear whether Mitchell has submitted any request to the warden of USP Lee. Regardless, the government has not challenged Mitchell's motion on the grounds of failure to exhaust, or any other grounds. *See generally* Docket 240; *see also United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced *so long as the opposing party properly raises it*." (emphasis added)); *see also United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) ("Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[]' and accordingly 'may be waived or forfeited' by the government." (quotation omitted)). Thus, in the interest of judicial economy, the court will review Mitchell's motion on the merits.

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary

and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The final category applies where the defendant received an unusually long sentence and a change in law other than a nonretroactive amendment to the guideline manual would produce disparity between that sentence and the sentences imposed on similarly situated defendants today. U.S.S.G. §1B1.13(b)(6). The Eighth Circuit has indicated that a "nonretroactive change[] in sentencing law may *not* establish eligibility for a § 3582(c)(1)(A) sentence reduction . . . but may be considered in exercising a court's discretion to an eligible defendant[.]" *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1004 (8th Cir. 2023).

      Mitchell's motion appears to seek compassionate release based on the category for an unusually long sentence where there has been a change in law. *See* U.S.S.G. § 1B1.13(b)(5); Docket 71. Mitchell points out that his base offense level from his Presentence Report (PSR) was determined using a ratio to convert crack cocaine into converted drug weight that results in 18 times more converted drug weight than the comparable ratio for powder cocaine. *See*

Docket 71 at 1; Docket 49 ¶ 28; U.S.S.G. § 2D1.1(c)(4).  The 493.4 grams of cocaine base that Mitchell was responsible for in his PSR resulted in 1,761.93 kilograms of converted drug weight, which when added to the fentanyl's converted drug weight produced a total of 3,129.43 kilograms of converted drug weight. *See* Docket 49 ¶ 28. Because Mitchell was found responsible for between 3,000 kilograms and 10,000 kilograms of converted drug weight, his base offense level was 32. *See id.*; U.S.S.G. § 2D1.1(c)(4).

Mitchell correctly points out that if the ratio used to convert crack cocaine into converted drug weight was the same as the ratio used to convert powder cocaine into converted drug weight, this would have resulted in a lower converted drug weight and a lower offense level in his case. *See* Docket 71 at 1–2; U.S.S.G. § 2D1.1 cmt. n. 8(d) (Drug Conversion Table). Under the drug conversion table in the notes to U.S.S.G. § 2D1.1, 1 gram of powder cocaine results in 200 grams in converted drug weight, whereas 1 gram of crack cocaine results in 3,571 grams of converted drug weight. U.S.S.G. § 2D1.1 cmt. n. 8(d) (Drug Conversion Table). This is a ratio of eighteen to one. If the 493.4 grams of crack cocaine Mitchell was found responsible for had been multiplied by the powder cocaine conversion rate of 200, only 98.68 kilograms of converted drug weight would result. This would have lowered the total converted drug weight Mitchell was responsible for to 1860.61 and reduced his base offense level to 30. *See* U.S.S.G. § 2D1.1(c)(4); Docket 49 ¶ 28.

But fatally to Mitchell's motion, the ratio between crack cocaine and

powder cocaine in determining converted drug weight remains eighteen to one under the current guidelines.[1] *See* U.S.S.G. § 2D1.1 cmt. n. 8(d) (Drug Conversion Table). The Department of Justice has issued guidance instructing prosecutors to "promote the equivalent treatment of crack and powder cocaine offenses" by "charg[ing] the pertinent statutory quantities that apply to powder cocaine offenses" for crack cocaine offenses and advocating for "sentence[s] consistent with the guidelines for powder cocaine rather than crack cocaine." Merrick Garland, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases* (Dec. 16, 2022), https://www.justice.gov/ag/file/1265321/dl?inline. But this guidance does not constitute a change in law under § 1B1.13(b)(6), and thus Mitchell fails to establish an extraordinary and compelling reason for a sentence reduction.

## CONCLUSION

Mitchell has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

---

[1] In 2011, Congress amended the mandatory minimum statute for cocaine offenses so that the ratio in quantity required to trigger a mandatory minimum sentence between crack and powder cocaine moved from 100:1 to 18:1. *See* Fair Sentencing Act § 2(a), 21 U.S.C. § 841(b)(1). The guidelines were subsequently amended to change the converted drug weight for one gram of crack cocaine to 3,571, or approximately 18 times more than for powder cocaine. *See* U.S.S.G. 2D1.1, Amendment 759, Part A; U.S.S.G. § 2(D)1.1 (Drug Conversion Table). This was in keeping with a general policy of "ensur[ing] that the quantity-based relationship established by statute between crack cocaine offenses and offenses involving all other drugs is consistently and proportionally reflected throughout the Drug Quantity Table at all drug quantities." U.S.S.G. 2D1.1, Amendment 759, Part A.

ORDERED that the defendant's motions for relief under the First Step Act (Docket 71) and for the production of a transcript and waiver of costs (Dockets 76–77) are denied.

Dated May 3, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE